**CONSOLIDATION COAL COMPANY, INC., Petitioner,**

v.

**ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

**No. 75–1290.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 13, 1975.

Decided July 1, 1976.

Harold R. Schmidt, Pittsburgh, Pa. (Lawrence A. Demase, Frederick W. Steinberg, Rose, Schmidt & Dixon, Pittsburgh, Pa., on brief), for petitioner.

Erica L. Dolgin, Atty., U. S. Dept. of Justice, Washington, D. C. (Robert Zener, Gen. Counsel, E. P. A., Walter Kiechel, Jr., Acting Asst. Atty. Gen., Alfred T. Ghiorzi and Edmund B. Clark, Attys., U. S. Dept. of Justice, Washington, D. C., on brief), for respondent.

Before HAYNSWORTH, Chief Judge, CRAVEN, Circuit Judge, and FIELD, Senior Circuit Judge.

FIELD, Senior Circuit Judge:

In this statutory review[1] Consolidation Coal Company, Inc., (Consol) challenges the action of the Administrator of the Environmental Protection Agency (EPA) in denying its request for an adjudicatory hearing in regard to the two year durational limit contained in the National Pollutant Discharge Elimination System (NPDES) permit issued for one of its mines in West Virginia. The denial was based upon the Administrator's interpretation of the Federal Water Pollution Control Act Amendments of 1972[2] (the Act) that the two year limit on the permit, although shorter than the permissive maximum provided in the Act,[3] had been certified by the State of West Virginia pursuant to Section 401(d)[4] and, since it was a condition binding upon him, an adjudicatory hearing on the question would be inappropriate.

Briefly stated, the background of this controversy is as follows. Consol operates a deep bituminous coal mine known as Lynco No. 2 Mine in Wyoming County, West Virginia. Since operation of the mine results in the discharge of pollutants into the waters of a stream known as Lower Road Branch, Consol applied to the EPA for an NPDES permit on April 15, 1973. After receipt of the application, in December of 1973 the EPA forwarded to the West Virginia Department of Natural Resources (DNR) a report describing the discharge and setting out the requirements which EPA proposed to include in the permit. In April of 1974 EPA and the mine drainage section of the DNR held discussions relative to the NPDES permit program and State certification of requirements to be included. The State representatives were concerned about the effect on water quality of concentrations of iron found in the discharges from mines in southern West Virginia, and it was decided that the State should certify that permits for some discharges be limited to two years in order that more stringent effluent limitations might be placed in new permits in 1976 if such were found necessary to achieve the specified water quality standards by 1977 as required by Section 301 of the Act.[5]

On July 10, 1974, DNR tentatively certified to EPA the discharge from the Lynco Mine, advising that West Virginia would require a two year permit on such dis-

1.  33 U.S.C. § 1369(b)(1)(F).

2.  33 U.S.C. § 1251, *et seq.*

3.  33 U.S.C. § 1342(b)(1)(B).

4.  33 U.S.C. § 1341(d).

5.  33 U.S.C. § 1311(b)(1)(C).

charge, and thereafter a public notice of intent to issue several permits to Consol, including WV 0021261 for the Lynco Mine, was jointly issued by EPA and DNR on July 31, 1974. The draft permit submitted to Consol by EPA indicated that it would expire in two years, and on August 8, 1974, Consol requested that EPA hold an adjudicatory hearing in regard to the expiration date. Due to some confusion resulting from a typographical error in the Lynco permit, Consol withdrew its request for a hearing, but when it became clear that the permit was to be limited to a term of two years Consol renewed its request on December 20, 1974. EPA denied the request, stating that the issues raised were based upon the State's certification pursuant to Section 401 of the Act and could not be changed by the Administrator. On January 27, 1975, Consol filed an appeal with the West Virginia Water Resources Board,[6] specifically stating, however, that such action was not intended as a waiver of Consol's position that it was entitled to an adjudicatory hearing before the EPA. For reasons hereinafter set forth the Water Resources Board has never scheduled a hearing on Consol's appeal. In the meantime Consol conducted negotiations with DNR which resulted in a recertification of all of Consol's permits for a period of five years with the exception of the Lynco permit. Consol filed the present petition for review on March 18, 1975, and subsequent thereto DNR advised Consol that based upon a field report it would not change its certification for the Lynco permit.

Although conceding that under Section 401 of the Act a state certification is a condition precedent to the issuance of an NPDES permit, Consol contends that the Administrator is not required to accept conditions which, although recommended by the State, are not properly a part of the certification. In support of its position Consol refers to 40 C.F.R. § 125.22(b), enti-

tled "Conditions of Permits," which reads in part as follows: " * * * conditions *recommended* by state water pollution control officials, * * * or other governmental officials *may* be added to permits if the Regional Administrator believes such *recommended* conditions will aid in carrying out the purposes of the Act." (Emphasis added). Consol argues that the two year limit on the Lynco permit is a "recommended condition" and that, accordingly, the Administrator is required to make an independent determination whether such two year limitation should be included in the present permit. Consol contends that the Administrator has recognized that a time limit on a permit is a "recommended condition" in another EPA regulation, 40 C.F.R. § 125.15(b) entitled "Duration of Permits", which provides, *inter alia,* that: "Permits of less than five years duration *may* issue in appropriate cases and Regional Administrators shall give great weight to the *advice* of state or interstate water pollution control officials on the appropriate duration for particular permits." (Emphasis added). We find it unnecessary to decide whether Consol is on solid ground in making this argument for we conclude that, on the facts of this case, due process requires that it be granted an adjudicatory hearing.

In its original brief and oral argument EPA took the position that the requirements of due process had been satisfied in this case since under W.Va.Code Ann., § 20–5A–15, Consol could obtain a hearing before the West Virginia State Water Resources Board. However, the supplemental record[7] filed with us after oral argument contains an opinion of the Attorney General of West Virginia dated November 24, 1975, directed to the Chairman of the Water Resources Board advising that the Board has no authority to entertain an appeal based upon the State's certification to the EPA pursuant to the requirements of Section 401

---

**6.** Under the West Virginia Water Pollution Control Act, the Water Resources Board is a division of the Department of Natural Resources. W.Va.Code Ann., § 20–5A–1, *et seq.*

**7.** Both petitioner and respondent were granted leave to supplement the record subsequent to oral argument.

of the Act. EPA now contends that, in any event, Consol can obtain review of the action of DNR in the State courts under the West Virginia Administrative Procedures Act, W.Va.Code Ann., § 29A–5–4, and that such a review is consistent with the Congressional intent[8] and also comports with due process. *West Penn Power Company v. Train,* 522 F.2d 302, 311 (3 Cir. 1975). We are of the opinion, however, that under the opinion of the Attorney General Consol has no available channels of State review, either administratively or judicially. While the West Virginia Water Pollution Control Act incorporates to some degree the provisions of the State Administrative Procedures Act, it is clear that judicial review of the DNR action in this case may be obtained only if the Water Resources Board has jurisdiction to entertain the threshold administrative appeal.[9]

In the relatively new area of environmental law "[t]he Constitution requires an opportunity at a meaningful time and in a meaningful manner for a hearing appropriate to the nature of the case,"[10] and we have stated that

> "if the resulting administrative action, whether regarded as rulemaking or otherwise, 'is individual in impact and condemnatory in purpose' or 'when the issue presented is one which possesses great substantive importance, or one which is unusually complex or difficult to resolve on the basis of pleadings and argument,' a hearing preceding any final administrative action is appropriate." (Footnotes omitted). *Appalachian Power Co. v. Environmental Pro. Agcy.,* 477 F.2d 495, 501 (4 Cir. 1973).

In our opinion, the time limit on the Lynco permit raises issues which entitle Consol to a hearing at either the state or federal level prior to any final administrative action. Since such a hearing at the state level is presently foreclosed, due process requires that the Administrator grant a hearing in this case. Accordingly, this proceeding is remanded to the Administrator for that purpose.

*REMANDED.*

---

**8.** H.Rep.No.92–911, 92d Cong., 2d Sess. 122 (1972).

**9.** *See* W.Va.Code Ann., § 20–5A–15 and 16.

**10.** *Getty Oil Company (Eastern Operations) v. Ruckelshaus,* 467 F.2d 349, 356 (3 Cir. 1972).